UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-239-GWU

MARGARETT ANN KENDALL,                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of

1

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Margarett Ann Kendall, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of low back and neck pain secondary to degenerative disc disease of the cervical and lumbar spine and pain secondary to arthritis.  (Tr. 12).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Kendall retained the residual functional capacity to return to her past relevant work as a bookkeeper, receptionist, and correctional officer, and therefore was not entitled to benefits.  (Tr. 13-16).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 49, post-high school education and work experience, could perform any jobs if she were limited to "light" level exertion with the option of sitting or standing at one-hour intervals, and also had the following non-exertional restrictions.  She: (1) could not climb ladders, ropes, or scaffolds or crawl; (2) could occasionally operate foot pedal controls with her right leg; and (3) could not be exposed to concentrated vibration or temperature extremes.  (Tr. 42-3).  The VE testified that such a person would not be able to perform the job of corrections officer, nor would she be able to do the job of receptionist as she performed it, since her testimony was that it involved lifting up to 50 pounds.  (Tr. 43).  However, the

7

person would be able to perform the job of receptionist as it is generally performed.[1]
(Id.).  If her testimony of chronic pain with limitations on sitting and standing was
given full credibility, the VE testified that she would not be reliable enough to hold
a job.  (Tr. 43-4).

On appeal, this court must determine whether the administrative decision is
supported by substantial evidence.

As the above excerpt from the VE's testimony shows, the ALJ was incorrect
in saying that the plaintiff could return to her past relevant work as a correctional
officer.  However, the VE's testimony is clear that she could perform the job of
receptionist as it is generally performed in the national economy, even if she could
not return to the particular job she had previously held.  See Studaway v. Secretary

---

[1] The colloquy between the ALJ and the VE was as follows:

Q  Could such a person perform any of Ms. Kendall's past relevant work?
A  No work -- the portion of the job -- no.  Actually, the answer is no,
because of the need to change positions hourly.  However, there would be
transferability to jobs.  That –
Q  Work as a -- work as the -- bookkeeper/receptionist would not allow a
sit/stand option would not allow?
A  Well, the receptionist definitely would.  But I understood that she was
lifting 50 pounds.
Q  As generally performed.
A  As generally performed, yes, sir.
Q  All right.  What about the corrections officer job?  Wouldn't that allow a
sit/stand option?
A  No.

(Tr. 43).

of Health and Human Services, 815 F.2d 1074, 1076 (6th Cir. 1987); 20 C.F.R. § 404.1560(b)(2).

The plaintiff also notes that, while the administrative hearing was conducted by ALJ Roger Reynolds (Tr. 17), the decision was signed by ALJ Don C. Paris (Tr. 16). The plaintiff asserts that ALJ Paris was the author of the decision and that ALJ Paris apparently did not review the hearing transcript or ALJ Reynolds' hearing notes. Contrary to the plaintiff's assertion, however, the hearing decision does contain at least a passing reference to the plaintiff's husband's testimony. (Tr. 14). The hearing decision itself appears to indicate that it was written by ALJ Reynolds, since the text states that "the undersigned held a video hearing," and ALJ Paris signed the decision "for Roger L. Reynolds." (Tr. 16). The implication of such a format of signature is that the hearing decision had been prepared by ALJ Reynolds but was signed by ALJ Paris in his absence.

The defendant cites his Hearing, Appeals, and Litigation Law Manual (HALLEX) as providing specific procedures for a hearing office chief ALJ to sign a final decision draft where the ALJ who authored it is unavailable. HALLEX Section I-2-8-40. This section provides that the ALJ must give the hearing office chief ALJ prior affirmative written authorization to sign the decision. The Commissioner admits that there is no evidence of such an authorization in the present case, but there is also no evidence of prejudice resulting from the omission. This court recently considered the issue of whether the Commissioner's failure to follow a

9

provision of HALLEX is reversible error, finding that there was a split between the Circuits on the issue.  The Ninth Circuit held that HALLEX was purely an internal manual with no legal force, while the Fifth Circuit concluded that, although HALLEX does not carry the force of law, an agency must follow its own procedures where the rights of individuals are affected.  This court concluded that a failure to follow the exact procedures in HALLEX did not require reversal absent a convincing showing of prejudice to the plaintiff.  Caudill v. Astrue, No. 7:09-70-GWU (E.D. Ky. January 14, 2010), citing Moore v. Apfel, 216 F.3d 864, 868 (9th Cir. 2000); Newton v. Apfel, 209 F.3d 448, 459-60 (5th Cir. 2000).

In the present case, there has not been a convincing showing of prejudice. The context of the decision suggests that it was prepared by ALJ Reynolds, and not by ALJ Paris.  Even if a written authorization had not been obtained by ALJ Paris, HALLEX does not create a procedural due process issue as do the Commissioner's regulations in the Code of Federal Regulations.  Cf.  Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004).

The plaintiff alleged disability beginning April 20, 2007, although she stated that part of the reason for stopping work on that date was that she did not want to be part of "underhanded" activities by her employer.  (Tr. 23).  She felt that her back injury had occurred many years before and she had never felt right since.  (Tr. 26-7).  It was now difficult for her to perform activities such as sweeping or mopping due to pain in her neck and back.  (Tr. 29-30).  She was able to perform some light

household activities and grocery shopping and take care of her grandchildren on Friday nights.  (Id.).  She had been referred to an orthopedist, Dr. Harry Lockstadt, who had wanted to give her shots.  (Tr. 27).  However, she was not eligible for a medical card and could not afford this treatment.  (Tr. 27, 31).  Her husband corroborated her statements.  (Tr. 34-5).

The medical evidence in the transcript shows that Mrs. Kendall sought treatment for back pain as early as September, 1998, approximately nine years before her alleged onset date.  At that time an MRI of the lumbosacral spine was obtained which reportedly showed a large right herniation, most likely entrapping the right L3 nerve root.  (Tr. 122, 176).  She began complaining of right arm numbness in June, 2006, and x-rays taken showed degenerative disc disease and spurring at the C6 level.  (Tr. 203).  However, only a month later the plaintiff's family physician, Dr. James Noble, reported that she was "doing real well" overall with cervical osteoarthritis that gave her headaches "from time to time."  (Tr. 202).  There were no reflex abnormalities.  Even after the plaintiff's alleged onset date, in July, 2007, Dr. Noble found an equal grip, equal reflexes, and a normal neurological examination.  (Tr. 199).

Dr. Timothy Gregg reviewed the evidence on November 6, 2007 and concluded that Mrs. Kendall would be capable of lifting 50 pounds occasionally and 25 pounds frequently, with occasional crawling, no climbing of ladders, ropes, or scaffolds, and a need to avoid concentrated exposure to vibration.  (Tr. 207-13).

He noted her positive findings on x-rays and the MRI report but also the essentially normal neurological findings.  (Tr. 207).  He felt that the plaintiff was partially credible in her allegations and there was no examining source statement to discuss. (Tr. 211-12).

The hypothetical question included all of the restrictions found by Dr. Gregg, but in addition the ALJ gave the plaintiff the benefit of the doubt in reducing her lifting level and indicating that she could never crawl or be exposed to temperature extremes.

The plaintiff argues that it was error to rely on a non-examining source and asserts that the ALJ should have placed reliance on Dr. Lockstadt, who did not examine Mrs. Kendall until March 6, 2008, meaning his report was not available to Dr. Gregg.  Dr. Lockstadt noted Mrs. Kendall's complaints of right-sided neck pain with radiation into the right shoulder and lower back pain radiating down the right leg. (Tr. 216).  However, she was capable of walking for up to 30 minutes at a time. His physical examination showed tenderness in the neck and lower back, but with normal reflexes and "good mobility to flexion and extension."  (Id.).  Dr. Lockstadt reviewed an MRI scan which had been done "earlier this year," and is not otherwise in the transcript.  He described the MRI as showing degeneration at all lumbar levels, but no "gross nerve root compression."  (Id.).  Lumbar spine x-rays showed degeneration, especially at L4-5 and L3-4, but with good alignment otherwise.  Neck x-rays showed narrowing at several levels but relatively good alignment.  (Id.).  He

assessed cervical spondylosis and lumbar spondylosis and disc degeneration with "mild dynamic spinal stenosis." (Id.). Dr. Lockstadt noted that it would be difficult to manage the plaintiff's problem surgically and recommended physiotherapy and traction along with lumbar epidural injections.  (Id.).  In terms of work restrictions, he indicated that "the right leg feels numb and weak possibly giving out on her and she may be at risk in the work place.  She probably is not safe in the work place." (Id.).

The court cannot agree with the plaintiff that Dr. Lockstadt was a treating source.  There is evidence of only one office visit in the transcript, and both Mrs. Kendall and her husband testified that they had not made any further visits due to financial reasons.  Even if Dr. Lockstadt were a treating source, his restrictions were couched in very equivocal terms.  He stated that her right leg could "possibly" give out, that she "may" be at risk in the work place and was "probably" not safe in the work place.  The doubt is understandable considering that his examination did not reveal any neurological abnormalities.   A reasonable fact finder could have concluded that Dr. Lockstadt was basing his comments largely on the plaintiff's subjective statements rather than on objective evidence.  Therefore, there is no basis for a remand.

Finally, the plaintiff has submitted a fully favorable ALJ decision dated August 14, 2009, which finds her to have been under a disability beginning October 1, 2008, one week after the administrative decision at issue in this appeal.  Although

13

the plaintiff argues that the medical evidence relied upon in the 2009 decision is almost identical to the 2008 decision, a review of the list of exhibits shows additional evidence from 2008 and 2009 which was not submitted to the ALJ in the present case.  There is no way of knowing what this new evidence showed, and it cannot provide a basis for a remand of the current decision.  Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 685 (6th Cir. 1992); Cline v. Commissioner of Social Security, 96 F.3d 146, 148-9 (6th Cir. 1996).

The decision will be affirmed.

This the 19th day of May, 2010.

Signed By:

G. Wix Unthank

United States Senior Judge